UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

ILLIANA SURGERY AND MEDICAL )
CENTER LLC nka Heartland )
Memorial Hospital LLC, )
iHEALTHCARE, INC., )
 )
       Plaintiffs )
 )
   v. ) Case No. 2:07 cv 3
 )
HARTFORD FIRE INSURANCE )
COMPANY, )
 )
       Defendant )

## REPORT AND RECOMMENDATION

This matter is before the court on the Order for a report and recommendation by the magistrate judge of the Motion for Sanctions and Request for Default Judgment [DE 153] filed by the plaintiffs, Illiana Surgery and Medical Center LLC nka Heartland Memorial Hospital LLC and iHealthcare, Inc., on March 4, 2011. For the reasons set forth below, the court RECOMMENDS that the motion be GRANTED IN PART and DENIED IN PART.

### Background

On December 12, 2006, the plaintiffs, Illiana Surgery and Medical Center and iHealthcare, sent Hartford a document request seeking its insurance policies, underwriting files, and claims file. At the April 4, 2007 pre-trial conference, the court ordered Hartford to produce its insurance policies, examinations under oath (EUO), and claim files. Hartford proceeded to produce

its insurance policies, two EUOs, and a set of documents presented as its claims file. Hartford contemporaneously produced a privilege log, listing the documents it was withholding and explaining its reason for so doing. On April 8, 2008, Hartford sent Illiana an amended privilege log and additional documents that previously were withheld.

The parties debated over the production of documents identified in the privilege log, and on April 17, 2008, Illiana filed a motion to compel production of certain documents created by the attorneys at Fisher & Kanaris, P.C. which were part of Hartford's claims file. Hartford objected to producing the documents, citing the attorney-client and work product privileges. The court determined that the attorneys were serving as outside claims adjusters rather than in their capacity as legal counsel, so that the attorney-client and work product privileges did not apply. This court ordered production of the documents, and the decision was affirmed by the district court. The court's November 18, 2009 Opinion specifically ordered production of documents HC 1118-1123 and HC 1132-1161. On December 5, 2008, Hartford produced these documents.

Illiana represents that when it was preparing to depose Hartford's lead claims adjuster, Steve Palazzolo, it determined that Hartford failed to produce documents contained in its claims

file.  Illiana sent an additional document request on May 1, 2009, to ensure that all the documents in Hartford's claims file either had been produced or would be produced prior to Palazzolo's deposition.  Illiana supplemented its May 1 document request with a letter listing the documents Illiana believed to be missing from the file.  Hartford served its response on July 1, 2009.  Illiana found the response inadequate, discussions ensued, and Hartford agreed to supplement its document production and produce the entire claims file.

On July 15, 2009, Hartford produced 797 new claims file documents, and on July 22, 2009, it produced 333 more.  On September 22, 2009, Illiana requested the attachments to several emails that were omitted from the file.

Illiana deposed Palazzolo and became concerned that documents remained missing from Hartford's claims file.  Illiana served an additional document request, to which Hartford responded that the entire claims file had been produced.

In the summer of 2010, Illiana subpoenaed Jack Keeley, Hartford's computer consultant, to take his deposition.  In doing so, Illiana requested copies of documents pertaining to Keeley's work on Illiana's claim that had not already been produced by Hartford.  A year earlier, Hartford's counsel had promised to search for and produce any such documents.  However, 53 documents

consisting of 330 pages were produced immediately before Keeley's deposition. Hartford maintains that these documents were kept separate and apart from the Con Tech file and that many of the documents were duplicates of documents earlier produced.

Illiana also issued a deposition subpoena to Kevin Pugliese, the Fisher Kanaris attorney who performed most of the adjusting and investigation of Illiana's claim. Harford moved to quash the subpoena for Pugliese's deposition. The court denied the motion to quash, noting that Hartford did not establish that Pugliese had provided legal advice to Hartford. Pugliese's deposition was scheduled for January 13, 2011, and on January 6, 2011, Hartford served an additional 441 documents from Hartford's claims file and an additional document at Pugliese's deposition as ordered by the court. Illiana states that none of the documents produced on January 6, 2011, were listed in Hartford's privilege log and that Illiana had no way of knowing the documents existed or that the entire claims file had not been produced. Illiana states that the documents are essential to the case and that it will suffer prejudice from the delayed production because it was not afforded an opportunity to conduct discovery.

Included among the documents produced on January 6, 2011, were e-mails and working papers from Kurt Harms, a forensic accountant Hartford retained during its investigation of Illi-

ana's claim. Illiana states that Hartford never disclosed Harms in its initial disclosures as an individual who may have knowledge of the claim or who participated in the investigation, nor did Hartford identify Harms in response to an interrogatory Illiana propounded on Hartford asking Hartford to identify the individuals who participated in adjusting, investigating, or analyzing the claim.

Hartford also delayed production of a transcribed voice mail message from Steve Palazzolo, Hartford's lead in-house adjuster, to Pugliese. Palazzolo told Pugliese that the special investigator should report directly to Pugliese so if anything came up it would be protected by the attorney-client privilege.

The documents also included e-mails exchanged between Michael Nigohosian and Pugliese clarifying the secret investigation Nigohosian was conducting on Illiana's claim, e-mails that arguably show that Pugliese was ghostwriting Hartford's letters to Illiana, invoices from Fisher Kanaris, e-mails among the computer consultants Hartford retained to examine Illiana's computers that show Hartford's opportunity to examine Illiana's computers and Illiana's cooperation, and further evidence showing cooperation by Illiana's former attorney and employees. Illiana also believes that Hartford continues to withhold additional documents it requested without justification. The time sheets

submitted with the final production of documents indicated that Pugliese and other employees of Fisher Kanaris prepared documents related to Illiana's claim that were not produced, nor was an explanation provided for their absence.

At his deposition, Illiana's counsel questioned Pugliese whether he ever searched for documents related to the production requests, was asked to produce such documents, or was asked for his files, e-mails, or electronic files. Pugliese responded negatively to each question.

Illiana now brings this motion for sanctions, arguing that Hartford failed to comply with the court's April 4, 2007, June 30, 2008, and November 18, 2008 Orders, withheld requested discovery documents without cause, did not perform a diligent search for the requested documents, and continues to withhold documents.

## Discussion

Federal Rule of Civil Procedure 37(b)(2) gives the court authority to sanction a party for failing to comply with a court order and states in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
>
> > (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent — or a witness designated under Rule 30(b)(6) or 31(a)(4) —

fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

>> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>> 
>> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>> 
>> (iii) striking pleadings in whole or in part;
>> 
>> (iv) staying further proceedings until the order is obeyed;
>> 
>> (v) dismissing the action or proceeding in whole or in part;
>> 
>> (vi) rendering a default judgment against the disobedient party; or
>> 
>> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve an

orderly disposition. See Chambers v. NASCO, Inc., 501 U.S. 32, 44, 47, 111 S.Ct. 2123, 2132, 2134, 115 L.Ed.2d 27 (1991) (explaining that the court has broad inherent powers to sanction a party); Barnhill v. United States, 11 F.3d 1360, 1367 (7th Cir. 1993).

The court should consider several factors when determining which sanctions to employ, including: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." Rice v. City of Chicago, 333 F.3d 780, 784 (7th Cir. 2003) (citing Williams v. Chicago Bd. of Educ., 155 F.3d 853, 857 (7th Cir. 1998)). The sanctions must be proportional to the party's misconduct. Collins v. Illinois, 554 F.3d 693, 696-698 (7th Cir. 2009). The court measures this by weighting the proposed sanctions against the egregiousness of the party's conduct. Barnhill, 11 F.3d at 1368. Dismissal is the most severe sanction and generally is applied only when a party has displayed exceptional misconduct or when less drastic sanctions have proven unavailing. Sun v. Board of Trustees, 473 F.3d 799, 811 (7th Cir. 2007) (explaining that the Seventh Circuit has a well established policy of favoring trial on the merits over default judgments); Maynard v. Nygren, 332 F.3d 462, 467-68 (7th

Cir. 2003); Danis v. USN Communications, Inc., 2000 WL 1694325, *33-34 (N.D. Ill. Oct. 23, 2000) ("Because a default judgment deprives a party of a hearing on the merits, the harsh nature of this sanction should usually be employed only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party") (citing Societe Internationale v. Rogers, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958)) (explaining that a party should only be sanctioned with dismissal in extreme situations where there is evidence of willfulness, bad faith, or fault by the noncomplying party). The court first must consider whether less severe sanctions will remedy the damage. Marrocco v. General Motors, 966 F.2d 220, 223-24 (7th Cir. 1992).

The Seventh Circuit has employed two different standards for determining whether dismissal is an appropriate sanction. The court should consider whether there has been a clear record of delay or contumacious conduct, or whether less drastic sanctions have been unavailing, when assessing dismissal for the failure to comply with a court order. Maynard, 332 F.3d at 468-69; Large v. Mobile Tool International, Inc., 2008 WL 2116967, *7 (N.D. Ind. 2008) ("[C]ontumacious conduct merits strong sanctions, and when the court uses its inherent power to root out contumacious conduct, no showing of willfulness, bad faith, fault or even prejudice is required."). "A slightly different requirement - a

9

finding of willfulness, bad faith or fault - comes into play when dismissals are used specifically as a discovery sanction under Fed.R.Civ.P. 37." Maynard, 332 F.3d at 468-69 (citing In re Golant, 239 F.3d 931, 936 (7th Cir. 2001); Langley v. Union Electric Co., 107 F.3d 510, 514 (7th Cir. 1997); In re Rimsat, Ltd., 212 F.3d 1039, 1046-47 (7th Cir. 2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court)). "That is, even without 'a clear record of delay, contumacious conduct or prior failed sanctions,' a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate." Maynard, 332 F.3d at 468. See also Melendez v. Illinois Bell Co., 79 F.3d 661, 671 (7th Cir. 1996) ("Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant.").

Bad faith is "conduct which is either intentional or in reckless disregard of a party's obligations to comply with a court order." Marrocco, 966 F.2d at 224; Maynard, 332 F.3d at 470 (explaining that bad faith is exhibited where a party fails to comply with a court order or provides false or misleading responses). Similarly, fault does not mean the party's subjective motivation, but rather "the reasonableness of the conduct —

10

or lack thereof — which eventually culminated in the violation." Marrocco, 966 F.2d at 224; Langley, 107 F.3d at 514. The Seventh Circuit requires clear and convincing evidence of the discovery abuse to justify a default judgment because of the harsh nature of the penalty and the court's policy of favoring trial on the merits. Maynard, 332 F.3d at 468 ("[C]onsidering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case."); Larson v. Bank One Corp., 2005 WL 4652509, *9 (N.D. Ill. August 18, 2004) (explaining that a default judgment requires clear and convincing evidence of the sanctionable conduct, although an issue-related sanction requires only a preponderance of the evidence).

Although Hartford did not fully comply with every discovery request Illiana made, its conduct was not as egregious as Illiana would like the court to believe. Hartford complied with the court's order on Illiana's motion to compel, producing the specific documents the court identified. Shortly after the court denied Hartford's motion to quash Pugliese's subpoena, Hartford produced the subpoenaed documents. Illiana relies heavily on the court's order to produce the claims record made at the April 4, 2007, status conference. At this time, the court was not aware of Hartford's claims of privilege or the specific documents at

issue. Hartford produced documents in its claims file in compliance with the order and provided Illiana with a privilege log of the documents it chose not to disclose.

However, this is not to say that Hartford entirely satisfied its duties in performing discovery. Hartford failed to identify certain documents in its privilege log so that Illiana did not know the documents existed. Hartford also represented that the entire claims file had been produced, yet proceeded to produce additional documents subsequent to making this representation. Hartford has not denied or provided an explanation for misrepresenting that the entire claims file was produced. Illiana also introduced evidence that Hartford did not diligently search for the requested documents by asking those involved in the investigation of Illiana's claim to produce or search for the requested discovery. Again, Hartford has not denied or provided an explanation for failing to make a diligent search for the documentation Illiana requested during discovery. Also of concern is Hartford's failure to identify Harms as an individual with knowledge of Illiana's claim. Not only did Hartford have a duty to disclose Harms during its initial disclosures and subsequently to supplement its disclosures if it was not initially known that Harms had information, but Hartford also omitted Harms from its responses to Illiana's interrogatory asking Hartford to identify

the individuals involved with investigating the claim. See Rule 26(1)(A)(i) (stating that a party must provide other parties with "the name and, if known, the address and telephone number of each individual likely to have discoverable information").

Because the record shows that Hartford complied with portions of the court's orders, the court must consider whether Hartford displayed bad faith in failing to comply fully with the discovery requests. See Maynard, 332 F.3d at 468-69 (explaining that the court must find that the party acted willfully, in bad faith, or was at fault when considering default judgment as a discovery sanction). Illiana has shown Hartford's bad faith based on its predisposition for concealing discovery. Illiana presented evidence that during the investigation Hartford attempted to create an attorney-client privilege for the purpose of shielding certain documents from discovery. Furthermore, Hartford's failure to identify Harms as a potential witness, despite being obligated to do so under the federal rules and being specifically asked for this information, raises the question of what other information Hartford omitted from its responses. Hartford also misrepresented that the entire claims file was produced, though it was not.

It is evident that Hartford was not entirely forthcoming and cooperative during the discovery process. Hartford lied, at-

tempted to conceal documents, and did not conduct a diligent search for the requested documentation. Although Hartford clearly acted in bad faith and its conduct is far from commendable, Illiana has not demonstrated that it was of such an egregious nature as to warrant a default judgment. Despite having to be prodded along, Hartford eventually produced the documents and complied with the court's orders. The court has not attempted to employ less severe sanctions for these past transgressions, and because of this, it now finds that less severe sanctions are more appropriate.

Illiana argues that it will suffer prejudice because of the late production of the requested documents that inhibited its ability to conduct further discovery. Because the majority of the withheld documents relate directly to Illiana's bad faith claim, IT IS RECOMMENDED that Hartford be precluded from introducing any evidence that was not disclosed prior to January 5, 2011, to oppose Illiana's bad faith claim. Furthermore, it has been Hartford's position throughout litigation that Hartford did not have the requisite information to make a claim determination. However, the withheld documents arguably suggest otherwise. Because Illiana was denied the opportunity to explore this contention fully because of Hartford's delayed production of the requested information, the court further RECOMMENDS that Hartford

be precluded from introducing evidence that it lacked sufficient information to make a claims determination or that Illiana failed to provide information and comply with Hartford's investigation. The court finds that these sanctions shall remedy any prejudice Illiana may have suffered from Hartford's unwillingness to cooperate and WARNS Hartford that further misconduct may result in the court entering a default judgment against it. It is further RECOMMENDED that attorney fees be imposed against Hartford for the cost of filing this motion.

---

Based on the foregoing, IT IS RECOMMENDED that the Motion for Sanctions and Request for Default Judgment [DE 153] filed by the plaintiffs on March 4, 2011, be GRANTED IN PART with respect to sanctioning Hartford and DENIED IN PART on the matter of entering a default judgment.

Pursuant to 28 U.S.C. §636(b)(1), the parties shall have ten (10) days after being served with a copy of this Recommendation to file written objections thereto with the Clerk of Court, with extra copies e-mailed to the Chambers of the Honorable Joseph S. Van Bokkelen, Judge of the United States District Court, Hammond Division, and the Chambers of United States Magistrate Judge Andrew P. Rodovich, Hammond Division. The failure to file a timely objection will result in the waiver of the right to

challenge this Recommendation before either the District Court or the Court of Appeals.  Willis v. Caterpillar, Incorporated, 199 F.3d 902, 904 (7th Cir. 1999); Johnson v. Zema Systems Corporation, 170 F.3d 734, 739 (7th Cir. 1999); Hunger v. Leininger, 15 F.3d 664, 668 (7th Cir. 1994); The Provident Bank v. Manor Steel Corporation, 882 F.2d 258, 260-61 (7th Cir. 1989); United States v. Johnson, 859 F.2d 1289, 1294 (7th Cir. 1988); Lebovitz v. Miller, 856 F.2d 902, 905 n.2 (7th Cir. 1988).

ENTERED this 13th day of June, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge