```
                   UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION
```

ILLIANA SURGERY AND MEDICAL     )
CENTER LLC nka Heartland        )
Memorial Hospital LLC,          )
iHEALTHCARE, INC.,              )
                                )
            Plaintiffs          )
                                )
       v.                       )   Case No. 2:07 cv 3
                                )
HARTFORD FIRE INSURANCE         )
COMPANY,                        )
                                )
            Defendant           )

## OPINION AND ORDER

This matter is before the court on the Attorney Fee Petition and Request for Entry of Judgment [DE 209] filed by the plaintiffs, Illiana Surgery and Medical Center and iHealthcare, Inc., on September 20, 2011, and the Motion for Leave to Submit Amended Declaration of Donald M. Snemis [DE 211] filed on October 7, 2011. In light of the lack of response in objection, the Motion for Leave to Submit Amended Declaration of Donald M. Snemis [DE 211] is **GRANTED**. For the following reasons, the attorney fee reward is **GRANTED IN PART** and **DENIED IN PART**. The attorney fee award is reduced to $25,191.67.

### Background

The plaintiff, Illiana, through its counsel, Ice Miller, LLP, has spent the duration of this suit trying to recover documents from Hartford's insurance claim file. At the Rule 16

conference, the court first directed Hartford to produce its claims file.  Hartford did not turn over the file, causing Illiana to file a motion to compel on April 17, 2008. Hartford objected, citing attorney-client privilege.  The court determined that the attorneys who handled the claim were serving in their capacity as outside claims adjusters rather than attorneys and that the attorney-client privilege was inapplicable.  On June 30, 2008, this court ordered Hartford to produce the documents in the claim file.  Although Hartford represented to Illiana that it produced the claim file in its entirety, Hartford later produced a myriad of additional documents upon Illiana's suspicion that all of the documents had not been produced.

    Illiana proceeded to subpoena Steve Palazzo, Hartford's lead claims adjuster, and Jack Keeley, Hartford's computer consultant. In doing so, Illiana requested copies of documents pertaining to Jack Keeley's work on Illiana's claim that had not already been produced by Hartford.  A year earlier, Hartford's counsel had promised to search for and produce any such documents.  However, 53 documents were produced immediately before Keeley's deposition.  Illiana also issued a deposition subpoena to Kevin Pugliese, the Fisher Kanaris attorney who performed most of the adjusting and investigation of Illiana's claim.  Hartford moved to quash the subpoena, raising the same arguments that it made in

response to Illiana's motion to compel. The court again explained that Pugliese was acting as a claims adjuster, not as an attorney, and that the attorney-client privilege was inapplicable. At the court's direction, Hartford served an additional 441 documents from its claims file, the same one it previously told Illiana was produced in its entirety. None of the documents were listed in Hartford's privilege log, and Illiana had no way of knowing the documents existed.

Because Hartford defied the court's April 4, 2007, June 30, 2008, and November 18, 2008 Orders, the court granted Illiana's motion for sanctions on June 13, 2011. The parties appealed the Order to Judge VanBokkelen, who modified the sanctions imposed by this court. Judge VanBokkelen directed Illiana to file an attorney fee affidavit. Illiana filed its request for attorney fees on September 20, 2011, asking for $42,359.17 in attorney's fees. Hartford opposes the fees as unreasonable.

## Discussion

Federal Rule of Civil Procedure 37(a)(5)(A) states:

> If the motion [to compel] is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.

3

The recoverable fees are limited to the reasonable fees that an attorney would charge a client. *Bowerman v. Wal-Mart Stores, Inc.*, 2000 U.S. Dist. LEXIS 21616, *3 (S.D. Ind. Nov. 30, 2000). The court will consider whether the costs reportedly incurred in making the motion were reasonably necessary by evaluating the reasonableness of the time spent preparing the motion and the rates charged. *Equal Employment Opportunity Commission v. Accurate Mechanical Contractors, Inc.*, 863 F.Supp. 828, 834 (E.D. Wis. 1994).

"The attorney's standard hourly rate is the best measure of the attorney's reasonable hourly rate." *Accurate*, 863 F.Supp. at 834 (*citing* *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1150 (7th Cir. 1993)); *Parish v. City of Elkhart*, 2011 WL 1360810, *4 (N.D. Ind. April 11, 2011)(explaining that an attorney's billing rate is presumptively appropriate).  This is because the rate clients are willing to pay the attorney accounts for his individual skill and ability. *Gusman*, 986 F.2d at 1150.  In rendering this judgment, the court generally will take the attorney's experience and qualifications into consideration. *Accurate*, 863 F.Supp. at 834. An attorney may charge higher than average fees for work completed in his specialty, but he must demonstrate that he is deserving of the same inflated rate for areas outside his common practice. *Parish*, 2011 WL 1360810 at *4.  The court also will

4

look to the market rate for comparable services.  *Perry v. City of Gary*, 2011 WL 344007, *2 (N.D. Ind. Aug. 8, 2011).  If services of a similar quality were available within the market where the services were rendered for a reduced amount, the court may decrease the requested fees accordingly.  *Perry*, 2011 WL 344007 at *2-3.

The court also must determine whether the time allotted to the given task was reasonable under the circumstances.  *Accurate*, 863 F.Supp. at 834.  The court will consider the length of the motion or memorandum, the complexity of the case, and the amount of authority the document refers to when assessing the reasonableness of the time allotted to the activities.  *Maxwell v. South Bend Work Release*, 2010 U.S. Dist. LEXIS 114462, *13-14 (N.D. Ind. Oct. 25, 2010); *Arrington v. La Rabida Children's Hosp.*, 2007 WL 1238998, *3 (N.D. Ill. Apr. 25, 2007) (reducing requested time when brief in support of motion did not cite any case law); *Mattenson v. Baxter Healthcare Corp.*, 2003 WL 22317677, *1 (N.D. Ill. Oct. 9, 2003) (finding that two hours was a reasonable length of time to complete a three page motion).  Duplicate and excessive time cannot be recovered, and the court must carefully scrutinize a fee petition for such.  *Bowerman*, 2000 U.S. Dist. LEXIS 21616 at *3.  To enable the court to complete this task, "[t]he billing records must be sufficiently

5

clear to enable the district court to identify what hours, if any, are excludable because they are excessive, redundant, or otherwise unnecessary." **Shoney's, Inc. v. Schoenbaum**, 894 F.2d 93, 97 (4th Cir. 1990).

Illiana's fee affidavit is littered with redundant and excessive fees that would not be appropriate to bill to a client. See **Bowerman,** 2000 U.S. Dist. LEXIS 21616, at * 3 (explaining that attorney fees are limited to those an attorney would charge a client).  Although the court acknowledges Illiana's perpetual struggle to obtain the claim file from Hartford, this does not entitle Illiana to excessive fees.

As an initial matter, Illiana attempts to recover fees for researching and preparing the motion for sanctions at the senior partner billing rate of $415 per hour.  The court acknowledges that senior partners of Snemis' background may charge fees in excess of this rate, however, Illiana should not be awarded for its inefficient allocation of resources*.  See **Parish**, 2011 WL 1360810 at *4 (acknowledging that an attorney's billing rate work in his primary concentration is "presumptively appropriate", including fees up to $600 an hour, but that fees outside an attorney's specialty must be reduced accordingly).  Much of the basic research could have been completed by less experienced attorneys and at a much lower billing rate.  In fact, the same or

similar services could have been completed by Snemis' own firm at a lower billing rate.  See **Perry**, 2011 WL 3444007 at *2 (explaining that the court may reduce an out of town attorney's fees if services of equal quality were available at a lower charge within the market where the services were rendered).

Thomas or Calhoon could have researched and drafted the motion and supporting brief for Snemis to review, reducing the cost nearly in half.  Ice Miller has not demonstrated that the issues were particularly complex, requiring the expertise of a more experienced attorney, nor has it shown that Snemis was an expert in handling motions for sanctions and deserved the excess rate.  Therefore, the court must reduce Snemis' rate to that of the associate who could have completed much of the work and will assign an hourly rate of $250 for the time he spent researching and preparing the motion for sanctions and briefs in support.

To the extent the court can discern the amount of time Snemis spent reviewing the briefs and responses, an activity customary for a senior partner to perform, the court will assign Snemis' traditional hourly rate of $415.  For these same reasons, the court will assign Burke's hourly rate of $465 for time spent reviewing the motions and responses but will reduce the rate for any time spent completing work that could have been done at a lower hourly rate.  Because the rates charged by Thomas and

Calhoon are reasonable for this market, the court will not adjust their hourly rates for the time billed for legal services. *See Pace v. Pottawattomie Country Club, Inc.*, 2009 WL 4843403, *11 (N.D. Ind. Dec. 11, 2009) (finding $250 per hour is a reasonable rate for an attorney in the Northern District of Indiana).

Having affixed the appropriate hourly rates, the court must consider whether the time spent on the various tasks was reasonable. With regard to the original motion for sanctions, Snemis spent 18.5 hours researching and preparing the motion. Calhoon billed 13.5 hours for the same motion, most of which was spent researching. Calhoon, Burke, Thomas, and Snemis each reviewed the motion, adding another 3.2 hours. It is difficult to fathom that attorneys of this caliber would spend almost an entire work week, 35.9 hours, preparing a motion for sanctions, particularly when a senior partner is performing the majority of the work. In any case, the court must eliminate excessive and redundant fees. Illiana has not justified the need for four attorneys to review the same motion, nor has it provided any insight on what each additional attorney contributed. Therefore, the court will eliminate the fees charged by Burke on February 25, 2011, and Thomas on February 28, 2011, for reviewing the motion. The time Calhoon spent researching, 13.5 hours, is excessive for a motion for sanctions and will be reduced to 8 hours. Snemis' activities

will be charged at $250 an hour, the rate of an associate who could have completed the majority of the work, for all activities except his final review.  See **Perry**, 2011 WL 344007 at *2 (explaining that the court may reduce an out of town attorney's fees to the rate charged for comparable services in the market where the services are rendered).

The fee affidavit next shows that Snemis researched and prepared the reply to the motion for sanctions, and then Thomas, a less experienced attorney, reviewed Snemis' work.  This arrangement defies the logical progression of review.  If Ice Miller was careful in allocating resources, Thomas, rather than Snemis, would have researched and prepared the reply for Snemis, the senior partner, to review.  The court will award Snemis his customary rate for reviewing the brief in opposition and reply but will reduce the fees to $250 an hour for the time he spent preparing the reply brief.

It is also unclear from the fee affidavit what Thomas contributed on April 6, 2011.  His billing entry states that he conferred with Snemis, called the court regarding paper copies of recent filings, and gave attention to the motion for sanctions. Because Snemis researched and compiled the reply brief, it is unclear what Thomas actually contributed through these tasks, some of which appear to be purely administrative and not subject

to recovery. ***Shoney's***, 894 F.2d at 97 (explaining that the billing records must be sufficiently clear to enable the court to identify what hours were unnecessary). Therefore, Thomas will not be awarded fees for his services on April 6, 2011.

Snemis next reviewed the order on the motion for sanctions issued by this court and began to draft an objection. Again, Snemis, the partner, researched and drafted the opinion for the associate to review. The same product could have been produced, but at a cheaper cost, if Ice Miller efficiently allocated the work and had Thomas or Calhoon draft the brief for Snemis to review. Therefore, Snemis' hourly rate is reduced to $250 for the work completed on June 14, 15, 16, 21, and 22, 2011. Thomas reviewed the motion on three separate occasions for a total of 3.2 hours. The fee affidavit does not reflect that the motion was changed in any of the three times he revised the motion. The court therefore reduces the time spent reviewing the motion to the 2.2 hours Thomas reported on June 20, 2011. Thomas also reported time for drafting a motion to clarify the court's order scheduling the oral argument on the objections to the magistrate judge's order. This is beyond the scope of the attorney fee award, which was limited to the cost of "researching, presenting and arguing its motion for sanctions" and will not be accounted for in the total.

Ice Miller allocated a substantial time to preparing for the hearing on the motion for reconsideration of the motion for sanctions. The fee affidavit states that Ice Miller spent 47.3 hours preparing for and attending the hearing, 14.2 hours of which were used to prepare the exhibits. Although Ice Miller is permitted to take advantage of the court's technology, Hartford is not responsible for its training, and the fees recorded August 17, 2011, for Thomas' training are not recoverable. The court also finds that 14.2 hours preparing exhibits is excessive. Illiana should not be responsible for such trivial and administrative tasks as packing the lap top bag. The court declines to award attorney's fees for the work performed by Spellman setting up the Trial Director program. Ice Miller has not justified these fees, and the rate and time allotted are excessive and over inclusive. Thomas also recorded 10.2 hours preparing exhibits. Although Ice Miller argues that the time spent is reasonable because of the number of documents produced, Ice Miller would have had to go through the documents regardless of the motion for sanctions and has failed to show that these fees are directly related to the motion for sanctions. The court will reduce Thomas' time preparing the exhibits to 3 hours.

Thomas further recorded 9.6 hours for traveling and attending the hearing on the motion for sanctions, and Snemis recorded

9.2 hours.  Snemis reports that he continued to prepare for the hearing on the way to Hammond.  However, "travel time is not time in which a lawyer performs highly efficient legal services for the client."  *Olson v. HMS Westpac Exp., Inc.*, 2008 WL 4192066, *4 (S.D. Ind. 2008).  Because the court cannot determine what amount of this time was spent preparing during travel and what amount of time was spent at the hearing, Snemis' $415 per hour fee will be reduced in half for the entire time.  *See Olson*, 2008 WL 4192066, *4 (reducing attorney's fees for work done traveling to half the requested rate).  Furthermore, Thomas was not preparing for the hearing during the commute, nor does the record reflect that he offered any substantive help at the hearing.  His time is therefore reduced to the rate assigned to administrative assistants, $75 an hour, for the 9.6 hours he spent traveling to and assisting at the hearing.

   Thomas and Kim Jeffers recorded 2.9 hours of time preparing the fee affidavit and motion.  This time is reasonable and will stand as recorded.

   Finally, Ice Miller submitted $1,804.17 for expenses researching the motion for sanctions. Hartford argues that Ice Miller did not offer supporting documentation or detail for these charges.  However, the entries clearly show they were Westlaw searches for the motion for sanctions.  It is not clear what

12

additional details Hartford seeks.  The court will award the $1,804.17 in research expenses.

By taking into consideration the redundancy of tasks, inefficient allocation of resources, and excessive time allotted to various tasks, the court finds that Hartford is responsible for $25,191.67 in attorney's fees.  Hartford is **DIRECTED** to pay Illiana's attorney's fees in the amount of $25,191.67 within fourteen (14) days of this Order.

ENTERED this 6th day of December, 2011

s/ ANDREW P. RODOVICH
United States Magistrate Judge