```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION


ILLIANA SURGERY AND MEDICAL   )
CENTER LLC nka Heartland      )
Memorial Hospital LLC,        )
iHEALTHCARE, INC.,            )
                              )
          Plaintiffs          )
                              )
     v.                       )    Case No. 2:07 cv 3
                              )
HARTFORD FIRE INSURANCE       )
COMPANY,                      )
                              )
          Defendant           )
```

OPINION AND ORDER

This matter is before the court on the Motion to Quash Plaintiffs' Subpoenas and Request for Protective Order [DE 213] filed by the defendant, Hartford Fire Insurance Co., on October 28, 2011; the Motion for Leave to Submit Surreply Brief in Opposition to Hartford's Motion to Quash and Request for Protective Order [DE 221] filed by the plaintiffs, Illiana Surgery and Medical Center, LLC, and iHealthcare, Inc., on December 12, 2011; and the Motion in Opposition to Plaintiffs' Motion for Leave to Submit a Surreply Brief in Opposition to Hartford's Motion to Quash [DE 222] filed by Hartford on December 16, 2011.  For the following reasons, the Motion to Quash Plaintiffs' Subpoenas and Request for Protective Order [DE 213] is **GRANTED IN PART** and **DENIED IN PART;** the Motion for Leave to Submit Surreply Brief in Opposition to Hartford's Motion to Quash and Request for Protec-

tive Order [DE 221] is **GRANTED;** and the Motion in Opposition to Plaintiffs' Motion for Leave to Submit a Surreply Brief in Opposition to Hartford's Motion to Quash [DE 222] is **DENIED.**

## Background

On December 9 or 10, 2004, an unknown person accessed and destroyed Illiana Surgery and Medical Center's medical management computer system. Illiana held an insurance policy with Hartford Fire Insurance Company that provided coverage for lost business personal property and electronic vandalism. Illiana tendered a claim to Hartford, and it retained the law firm of Fisher Kanaris to assist with the adjustment of the claim. Fisher Kanaris launched an investigation into the claim and after two years had not issued a coverage determination letter. The insurance policy stated that the insured had to file a lawsuit within two years of filing a claim or the right to do so would be lost. Fearing the two years would expire without a coverage determination, Illiana filed a complaint on December 7, 2006, alleging breach of the insurance contract and bad faith.

Discovery commenced, and Illiana requested all documents related to the adjustment of its claim. At the April 4, 2007 pretrial conference, the court ordered Hartford to produce its insurance policies, examinations under oath (EUOs), and claim files. Hartford proceeded to produce its insurance policies, two

EUOs, and a set of documents presented as its claims file.  Hartford contemporaneously produced a privilege log, listing the documents it was withholding. On April 8, 2008, Hartford sent Illiana an amended privilege log and additional documents that previously were withheld.

On April 17, 2008, Illiana filed a motion to compel the production of certain documents withheld by Hartford.  Hartford objected that the documents were shielded from discovery by the attorney-client and work product privilege.  The court determined that the Fisher Kanaris attorneys were serving as outside claims adjusters rather than in their capacity as legal counsel and that the attorney-client and work product privileges did not apply.  This court ordered production of the documents, and the decision was affirmed by the district court.

While Illiana was preparing to depose Hartford's lead claims adjuster, Steve Palazzolo, it determined that Hartford failed to produce documents contained in its claims file.  Illiana sent an additional document request on May 1, 2009, to ensure that all the documents in Hartford's claims file either had been produced or would be produced prior to Palazzolo's deposition.  Illiana supplemented its May 1 document request with a list of the documents Illiana believed to be missing from the file.  After some discussion, Hartford agreed to supplement its document production

3

and produce the entire claims file. On July 15, 2009, Hartford produced 797 new claim file documents, and on July 22, 2009, it produced 333 more.

Following the production of these documents, Illiana requested the attachments to several emails that were omitted from the file and served an additional document request. Hartford represented that the entire file had been produced. However, 53 documents consisting of 330 pages were produced immediately before Jack Keeley, Hartford's computer consultant's, deposition. Hartford also produced an additional 441 documents from Hartford's claims files days before the deposition of Kevin Pugliese, the Fisher Kanaris attorney who performed most of the adjusting and investigation of the Illiana claim. Illiana complained that none of the documents produced prior to Pugliese's deposition were listed in Hartford's privilege log and that Illiana had no way of knowing the documents existed or that the entire claims file had not been produced.

The court sanctioned Hartford for failing to comply with the April 4, 2007, June 30, 2008, and November 18, 2008 Orders, because Hartford failed to produce discovery it was ordered to turn over, did not perform a diligent search for the requested documents, and continued to withhold documents. This court limited the evidence Hartford could introduce at trial. Both

parties moved to have the district court reconsider the sanctions imposed. District Judge Joseph Van Bokkelen held a hearing and asked Hartford "[W]ithout being — splitting hairs as to what belongs in a claim file and does not belong in a claims file, has everything that Hartford or its subsidiaries or people working for Hartford or people connected to this file in any way or the other, has that all, every document been produced at this point." Hartford's counsel answered affirmatively. The district court limited the sanctions to attorneys fees and re-opened discovery so Illiana could gather the remainder of the information it was denied the opportunity to discover.

In response to Judge VanBokkelen's order, Illiana issued new discovery, including a supplemental document request, a deposition notice, a subpoena to Buchanan Clarke and Schlader, a subpoena for documents to Guidance Software, Inc., and a subpoena for documents to Fisher Kanaris. Hartford has moved to quash the subpoenas, arguing that they are untimely, exceed the scope of the court order, and request privileged information. Illiana filed a response on November 14, 2011, and on November 28, 2011, Hartford submitted its reply brief and attached a new privilege log. Illiana now requests the opportunity to respond to both the privilege log and the new arguments raised in Hartford's reply brief.

5

Discussion

Local Rule 7.1(a) allows parties to file an initiating brief, a response, and a reply, but it does not contemplate the filing of a surreply or response to the reply brief. The court generally does not permit litigants to file a surreply brief. *Hall v. Forest River, Inc.*, 2008 WL 1774216, *n.3 (N.D. Ind. April 15, 2009); *Runkle v. United States*, 1995 WL 452975, *1 (N.D. Ind. May 9, 1995). However, "[a] surreply brief is occasionally allowed when it raises or responds to some new issue or development in the law." *Merrill Lynch Life Ins. Co. v. Lincoln Nat. Life Ins. Co.*, 2009 WL 3762974, *1 (N.D. Ind. Nov. 9, 2009) (*citing Hall*, 2008 WL 1774216 at *n.3). The court's decision to permit or deny a surreply brief is reviewed under an abuse of discretion standard. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

Hartford submitted a privilege log as an exhibit to its reply in support of its motion to quash and argued for the first time that the work produced by attorneys other than Pugliese is subject to the attorney-client privilege because the court has not ruled that these attorneys were acting as outside claims adjusters. Because Hartford raised new issues and submitted a new exhibit, the court, in its discretion, will afford Illiana an opportunity to respond to these developments. The court **GRANTS**

Illiana's Motion for Leave to Submit Surreply Brief in Opposition to Hartford's Motion to Quash and Request for Protective Order [DE 221] and **DENIES** the Motion in Opposition to Plaintiff's Motion for Leave to Submit a Surreply Brief in Opposition to Hartford's Motion to Quash [DE 222].

Federal Rule of Civil Procedure 45(c)(3)(A)(iii) provides that "[o]n timely motion, the Court by which a subpoena was issued shall quash or modify the subpoena if it . . . requires disclosure of privileged or other protected material and no exception or waiver applies."  Further, "the party seeking to quash a subpoena under Rule 45(c)(3)(A) has the burden of demonstrating that the information sought is privileged or subjects a person to an undue burden." *Hodgdon v. Northwestern University*, 245 F.R.D. 337, 341 (N.D. Ill. 2007).  A specific explanation of why the document is privileged must be shown by the party claiming a privilege, such that a court can decide whether the party has met its burden. *Allendale Mutual Insurance Company v. Bull Data Systems, Inc.*, 152 F.R.D. 132, 137 (N.D. Ill. 1993).  Mere conclusory statements of privilege will not satisfy the party's burden. *United States v. White*, 950 F.2d 426, 430-31 (7th Cir. 1991).

The attorney-client privilege is the oldest privilege, recognized by the common law, for confidential communications.

*Upjohn Company v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981).  The attorney-client privilege is designed to prevent the disclosure of confidential information about a client.  *Allendale Mutual Insurance Company*, 152 F.R.D. at 135 (*citing* *United States v. Lawless*, 709 F.2d 485, 487 (7th Cir. 1983)).  It is intended to encourage complete and honest communication between attorneys and their clients and thereby "promote broader public interests in the observance of law and administration of justice."  *Upjohn*, 449 U.S. at 389, 101 S.Ct. at 682.

When the basis of federal jurisdiction is diversity, the court applies the state law of attorney-client privilege. Federal Rule of Evidence 501.  *See* *Country Life Insurance Company v. St. Paul Surplus Lines Insurance Company*, 2005 WL 3690565, *4 (C.D. Ill. Jan. 31, 2005).  *See also* *Lorenz v. Valley Forge Insurance Company*, 815 F.2d 1095, 1097 (7th Cir. 1987).  Indiana codified the attorney-client privilege under Indiana Code §34-46-3-1 which states in part that "[e]xcept as otherwise provided by statute, the following persons shall not be required to testify regarding the following communications: (1) Attorneys, as to confidential communication made to them in the course of their professional business, and to advice given in such cases."  The attorney-client privilege "applies to all communications between the

client and his attorney for the purpose of obtaining professional legal advice or [legal] aid regarding the client's rights and liabilities." *Penn Central Corporation v. Buchanan*, 712 N.E.2d 508, 515 (Ind. App. 1999). "The scope of the privilege should be strictly confined within the narrowest possible limits." *Lawless*, 709 F.2d at 485. *See also Prevue Pet Products, Inc. v. Avian Adventures, Inc.*, 200 F.R.D. 413, 415 (N.D. Ill. 2001).

"Regarding insurance claims, to the extent that an attorney has acted as a claims adjuster, claims process supervisor, or claims investigation monitor, and not as a legal advisor, the privilege is not applicable." *Stout v. Illinois Farmers Insurance Company*, 150 F.R.D. 594, 610 (S.D. Ind. 1993). *See also Continental Casualty Company v. Marsh*, 2004 WL 42364, *2 (N.D. Ill. Jan. 6, 2004)("The public policy issue behind this result is that insurance companies, which are in the business of reviewing, processing, and adjusting claims, should not be permitted to insulate the factual findings of a claims investigation by the involvement of an attorney to perform such work."). Further, an insurance company's blanket claim of privilege is insufficient without specific information regarding each document withheld on the basis of privilege. *Hartford Financial Services Group, Inc. v. Lake County Park and Recreation Board*, 717 N.E.2d 1232, 1237 (Ind. App. 1999). Thus, information does not become privileged

9

simply because it came from counsel and was declared as advice. ***Allendale Mutual Insurance***, 152 F.R.D. at 138.

"The work product privilege is distinct from and broader than, the attorney-client privilege." ***Broadnax v. ABF Freight Systems, Inc.***, 1998 WL 474099, *1 (N.D. Ill. 1998). The work product doctrine is codified in Federal Rule of Civil Procedure 26(b)(3) as follows:

> Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent). But, subject to Rule 26(b)(4), those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means. . . . If the court orders discovery of those materials, it must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation.
>
> Rule 26(b)(3)(A)-(B)

*See also* ***Boyer v. Gildea***, 257 F.R.D. 488, 490 (N.D. Ind. 2009) (applying the Rule). To meet the qualified immunity from discovery based on Rule 26(b)(3), the materials sought must be: "(1) documents and tangible things; (2) prepared in anticipation of litigation or for trial; and (3) by or for a party or by or for a

party's representative." ***Boyer***, 257 F.R.D. at 490 (*citing* Wright, Miller & Marcus, 8 *Federal Practice & Procedure* §2024 (3d ed.)).

The threshold determination is whether the documents sought to be protected were prepared in anticipation of litigation or for trial. ***Caremark, Inc. v. Affiliated Computer Services, Inc.***, 195 F.R.D. 610, 614 (N.D. Ill. 2000). The test for each document is "whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." ***Caremark, Inc.***, 195 F.R.D. at 614 (*citing* and *quoting* ***Binks Mfg. Co. v. National Presto Indus., Inc.***, 709 F.2d 1109, 1118–19 (7th Cir. 1983)). Precedent is clear that eventual litigation does not ensure protection of all materials prepared by attorneys — the "remote prospect of future litigation" does not suffice to bring the work product doctrine into play. ***Binks Mfg. Co.***, 709 F.2d at 1120. Materials or investigative reports developed in the ordinary course of business do not qualify as work product. The material or report must have come into existence because of the litigation or because of an existing articulable claim likely to lead to litigation can the doctrine apply. ***Caremark, Inc.***, 195 F.R.D. at 614.

In its reply brief, Hartford withdrew its objection to the Guidance Software Inc.'s subpoena and the second supplemental

production request, limiting the dispute to the Fisher Kanaris subpoena.  Hartford originally objected to the subpoena as untimely.  However, the district court re-opened discovery to allow Illiana to perform all discovery it found necessary as a sanction for Hartford's uncooperativeness during the initial discovery period.  The district court did not limit the scope of discovery in its order.  Therefore, Illiana's request is both timely and within the scope of the district court's order.

Hartford's motion, on the other hand, did not conform with proper procedure.  Rule 26 requires that a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action."  Rule 26(c)(1).  Local Rule 37.1 requires that such certification reciting the date, time, and place of the conference or attempted conference and the names of all persons participating "shall be made in a separate document filed contemporaneously with the motion."  Local Rule 37.1(c).

Hartford did not file a certificate conforming with this requirement, and its motion may be denied on this ground alone. Given the tumultuous nature of past discovery and Hartford's persistent refusal to provide the documents irrespective of how many times the court has ordered production, it is unlikely that

12

any attempted conference would have led to an amicable resolution. Rather than deny Hartford's motion without prejudice and wait for the motion to be re-filed with the proper certificate, the court will address the issues on the merits.

Hartford first objects to Illiana's request for all documents in File No. 05-1155 that were not previously produced and all correspondence between Hartford and Fisher Kanaris. Hartford represents that all non-privileged documents previously were produced and that the request seeks documents prepared after litigation commenced. Illiana's requests were limited specifically to the documents Hartford did not produce previously, and therefore, does not request duplicate information. Given Hartford's adamant refusal to cooperate with discovery, it should be of no surprise that Illiana has made repetitive requests. Moreover, if Hartford would have followed the proper procedure and discussed its opposition to Illiana's discovery requests with Illiana prior to filing the motion, it is likely that the parties could have reached an agreement on limiting the discovery requests to the documents in existence prior to December 7, 2010.

Any documents created by Hartford's attorneys after the commencement of litigation arguably were prepared for the purpose of defending the litigation and fall within the attorney-client privilege. Rather than deny Illiana's requests in their en-

13

tirety, the court will limit Illiana's first three requests to the documents in existence prior to December 7, 2010, when the law suit was commenced.  Illiana similarly restricted the remainder of its requests to this time span, and if Hartford would have conferred with Illiana as it was obligated to do, it is likely that Illiana would have conceded to this limitation.

Hartford objects to many of Illiana's remaining requests as demanding privileged information.  However, Hartford has not identified which privilege it intends to assert or shown that the intended privilege is applicable.  In its brief, Hartford refers to ***Hartford Financial Services Group, Inc.***, 717 N.E.2d at 1235, for the proposition that pre-suit communications between an insurer and legal counsel regarding an insurance claim are protected by the attorney-client privilege.  The court normally would assume that Hartford intended to raise the attorney-client privilege based on its reliance on ***Hartford Financial***.  However, upon review of the documents addressed in its brief and the privilege log submitted as an exhibit to its motion, the documents identified are reported to contain attorney mental impressions, rather than communications exchanged between Fisher Kanaris and Hartford.  In fact, Hartford admits that Fisher Kanaris never gave many of the requested documents to it or included them in the claims file.

14

Specifically, Illiana's Request Numbers 4, 5, and 6, sought all of the Kanaris, Katalinc, and Hahn documents relating to Illiana's claim that were in existence prior to December 7, 2006; Request No. 10 sought copies of the annotation of various records from Illiana and iHealthcare prepared on or about October 30-November 1, 2005, by Brian Hahn; and Request No. 11 sought "all copies of the claim chronology based upon analysis of correspondence and claim documents produced by insured" prepared by Pugliese on or about February 2, 2005.  These requests seek documents prepared by the Fisher Kanaris attorneys rather than communications exchanged between Fisher Kanaris and Hartford and are more amenable to the work product privilege.  Even if Hartford intended to assert the attorney-client privilege, it did not show that any of these requests sought information concerning the exchange of communication between Hartford and Fisher Kanaris, and it did not satisfy its burden to show that the attorney-client privilege applied.

Hartford similarly failed to show that the documents sought were prepared in anticipation of litigation and subject to the attorney-client privilege.  There must be more than a possibility that future litigation might ensue.  ***Binks Mfg. Co.***, 709 F.2d at 1120.  The privilege log and Hartford's brief identified the documents Illiana requested as those used in preparing a coverage

determination. It is difficult to believe that litigation was imminent when coverage was yet to be determined. Moreover, the documents were prepared ten months before Illiana filed its complaint. In the complaint, Illiana explained that it had not received a coverage determination during the two year pendency of its claim, and to avoid expiration of the time allotted by the parties' contract to file a lawsuit, Illiana filed its complaint. Illiana did not anticipate litigation until it recognized that it was not going to receive a coverage determination prior to the expiration of the time it was allotted to file a law suit. Hartford has shown nothing more than at the time the documents were created, there was a remote prospect litigation might ensue if it denied coverage. ***Binks Mfg. Co.***, 709 F.2d at 1120. Again, Hartford carried the burden of establishing the privilege and has failed to show that the documents meet the criteria to shield them from discovery.

The court previously rejected Hartford's assertion of privilege with respect to the documents contained in the claim file. Hartford attempts to reformulate the same argument that the court has denied on numerous occasions by arguing that the court did not determine whether the Fisher Kanaris attorneys other than Pugliese were acting as claims adjusters rather than attorneys, and that the documents now requested were not kept in

the claims file.  However, the court did not limit its orders to the work produced by Pugliese.  Rather, the court explained that the law firm of Fisher Kanaris was performing the work of an outside claims adjuster during the investigation.

At the hearing on Illiana's motion for sanctions [DE 214], Judge Van Bokkelen was careful to question Hartford to avoid ambiguity.  Judge Van Bokkelen asked Hartford whether all documents had been produced irrespective of whether they were kept as part of the claim file or independently.  Hartford answered affirmatively, yet it now identifies new documents and attempts to shield them from production because they were not part of the claim file.  Hartford already has been ordered to produce the documents and instructed that where they were kept is irrelevant to the final analysis.

Hartford raises an additional objection to Request Number 11, arguing that the document is no longer in existence in the form it originally was created on February 2, 2006, but it does not explain why the document is protected from discovery in its current form.  Hartford bears the burden of showing the document is shielded from discovery and has failed to satisfy that burden.

In Request Nos. 7 and 8, Illiana sought documents that existed prior to December 10, 2006, and mentioned Kurt Harms and Guidance Software, Inc. in relation to Illiana's claim against

17

Hartford. Hartford objects that it produced all documents related to Kurt Harms and is in the process of producing the Guidance Software documents.  Given Hartford's reluctance to produce discovery and its attempts to hide information, it is not surprising that Illiana has made duplicative requests in an effort to insure it received all the information it is entitled to. Hartford is not required to produce documents related to Kurt Harms that previously were produced, however, any documents that are in any way related to Kurt Harms, concern Illiana's claim in any capacity, and existed prior to December 10, 2006, must be produced irrespective of what additional privileges Hartford believes may apply or where they were kept.  Moreover, Hartford cannot seek to strike a request for documents that Hartford has yet to produce and acknowledges are discoverable.  Hartford is **DIRECTED** to produce the documents related to Guidance Software.

Request No. 12 asks for all copies of the draft report from a computer consultant regarding analysis of the server analyzed by Pugliese on July 20, 2006.  Hartford disclaims knowledge of the report requested and states that it produced the Contech files and is in the process of producing the Guidance Software documents.  Given Hartford's reluctance to produce discovery, the court finds it necessary to instruct Hartford to produce all

documents in the Fisher Kanaris files that predate December 7, 2006.  Hartford must conduct a diligent search for this report.

Finally, Hartford objects to Request No. 13, which asks for a copy of the summary of Krause's examination under oath prepared by Kevin Pugliese on or about September 10-14, 2006. The letter never was sent to Hartford and is not a communication protected by the attorney-client privilege.  Instead, Hartford represents that the summary contains mental impressions of its attorney and is shielded from discovery by the work product privilege. Illiana has access to the transcript of Krause's EUO, and it is not clear why Pugliese's summary is necessary.  The summary was made close to the date this matter was filed, and the court assumes litigation was more imminent at the time the summary was prepared.  The court will deny this request and **GRANT** Hartford's motion on this limited issue.

_____

Based on the foregoing, the Motion to Quash Plaintiff's Subpoenas and Request for Protective Order [DE 213] filed by the defendant, Hartford Fire Insurance Co., on October 28, 2011, is **GRANTED IN PART** and **DENIED IN PART**; the Motion for Leave to Submit Surreply Brief in Opposition to Hartford's Motion to Quash and Request for Protective Order [DE 221] filed by the plain-tiffs, Illiana Surgery and Medical Center, LLC, and iHealthcare,

Inc., on December 12, 2011, is **GRANTED;** and the Motion in Opposition to Plaintiff's Motion for Leave to Submit a Surreply Brief in Opposition to Hartford's Motion to Quash [DE 222] filed by Hartford on December 16, 2011, is **DENIED.**  Hartford must produce all information Illiana requests with the exception of documents requested in Request Numbers 1-3 created after December 7, 2010, and Pugliese's summary of Krause's examination under oath.

ENTERED this 7th day of March, 2012


                            s/ ANDREW P. RODOVICH
                               United States Magistrate Judge