```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                          HAMMOND DIVISION


ILLIANA SURGERY AND MEDICAL      )
CENTER LLC nka Heartland         )
Memorial Hospital LLC,           )
iHEALTHCARE, INC.,               )
                                 )
            Plaintiffs           )
                                 )
       v.                        )     Case No. 2:07 cv 3
                                 )
HARTFORD FIRE INSURANCE          )
COMPANY,                         )
                                 )
            Defendant            )
```

OPINION AND ORDER

This matter is before the court on the Motion to Correct Errors [DE 243] and the Motion Requesting Oral Argument With Respect to Its Motion to Correct Errors [DE 244] filed by the defendant, Hartford Fire Insurance Company, on May 8, 2012.  For the reasons set forth below, the Motion to Correct Errors [DE 243] is **GRANTED IN PART** and **DENIED IN PART,** and the Motion Requesting Oral Argument With Respect to Its Motion to Correct Errors [DE 244] is **DENIED.**

Background

On December 9 or 10, 2004, Illiana Surgery and Medical Center's medical management computer system was destroyed. Illiana held an insurance policy with Hartford Fire Insurance Company that provided coverage for lost business, personal property, and electronic vandalism.  Illiana tendered a claim to

Hartford, and Hartford retained the law firm of Fisher Kanaris. The insurance policy had a two year limitation for filing a lawsuit.  Near the end of the two year limitation, Illiana filed a complaint with this court, alleging breach of the insurance contract and bad faith.

Discovery commenced, and Illiana requested all documents related to the adjustment of its claim.  At the April 4, 2007 pretrial conference, the court ordered Hartford to produce its insurance policies, examinations under oath (EUOs), and claim files.  Hartford proceeded to produce its insurance policies, two EUOs, and a set of documents presented as its claims file.  Hartford contemporaneously produced a privilege log listing the documents it was withholding. On April 8, 2008, Harford sent Illiana an amended privilege log and additional documents that previously were withheld.

On April 17, 2008, Illiana filed a motion to compel the production of certain documents withheld by Hartford.  In response, Hartford objected that the documents were shielded from discovery by the attorney-client and work product privileges. The court determined that the Fisher Kanaris attorney, Kevin Pugliese, was serving as outside claims adjuster rather than as legal counsel and that the attorney-client and work product

privileges did not apply.  This court ordered production of the documents, and the decision was affirmed by the district court.

While Illiana was preparing to depose Hartford's lead claims adjuster, Steve Palazzolo, it determined that additional documents had not been produced.  Illiana sent an additional document request on May 1, 2009, to ensure that all the documents in Hartford's claims file either had been produced or would be produced prior to Palazzolo's deposition.  Illiana supplemented its May 1 document request with a list of the documents Illiana believed to be missing from the file.  After some discussion, Hartford agreed to supplement its document production.  On July 15, 2009, Hartford produced 797 new documents, and on July 22, 2009, it produced 333 more.

Following the production of these documents, Illiana requested the attachments to several emails that were omitted and served an additional document request.  Hartford represented that the entire file had been produced.  However, 53 documents consisting of 330 pages were produced immediately before the deposition of Jack Keeley, Hartford's computer consultant.  Hartford also produced an additional 441 documents days before the deposition of Kevin Pugliese, the Fisher Kanaris attorney who performed most of the firm's work for Hartford.  Illiana complained that none of the documents produced prior to Pugliese's deposition

3

were listed in Hartford's privilege log and that Illiana had no way of knowing the documents existed or that the entire claims file had not been produced.  Hartford maintained that these documents and the 797 documents produced on July 15, 2009, and 333 produced on July 22, 2009, were not part of the claim file and were maintained in separate files by third-parties.

The court sanctioned Hartford for failing to comply with the April 4, 2007, June 30, 2008, and November 18, 2008 Orders, finding that Hartford failed to produce the discovery it was ordered to turn over, did not perform a diligent search for the requested documents, and continued to withhold documents.  This court limited the evidence Hartford could introduce at trial.  Both parties moved to have the district court reconsider the sanctions imposed.  Judge Joseph Van Bokkelen held a hearing and asked Hartford "[W]ithout being — splitting hairs as to what belongs in a claim file and does not belong in a claims file, has everything that Hartford or its subsidiaries or people working for Hartford or people connected to this file in any way or the other, has that all, every document been produced at this point." Hartford's counsel answered affirmatively.  The district court limited the sanctions to attorneys' fees and re-opened discovery so Illiana could gather the remainder of the information which it had been seeking.

In response to Judge Van Bokkelen's order, Illiana issued new discovery, including a supplemental document request, a deposition notice, a subpoena to Buchanan Clarke and Schlader, a subpoena for documents to Guidance Software, Inc., and a subpoena for documents to Fisher Kanaris.  Hartford moved to quash the subpoenas, arguing that they were untimely, exceeded the scope of the court order, and requested privileged information.  This court rejected Hartford's privilege argument for the same reasons cited in its Order granting Illiana's motion to compel and ordered production of the requested discovery information.

Hartford now objects to numerous statements in the court's Opinion and Order denying its motion to quash.  Specifically, the court stated that Illiana's computer system was destroyed by an unknown person.  Hartford now purports to know the identity of the individual who destroyed the computer system. Hartford also challenges the court's statement that after attempts to settle the insurance claim, Illiana filed a complaint "fearing the two years would expire without a coverage determination."  Hartford complains that Illiana filed suit after refusing to toll the two year contractual limitation.  Hartford also protests that many of the discovery documents that were turned over in July and August 2009 were not part of the claim file. Rather, they were part of files maintained separately by third-parties assisting with the

5

investigation.  Hartford also states that Illiana is to blame for the delays in discovery because it requested a six month stay after filing bankruptcy and that the court incorrectly stated that all the Fisher Kanaris attorneys were acting as claims adjusters, arguing that the April 2008 Order only found that Kevin Pugliese of Fisher Kanaris acted as a claims adjuster. Hartford filed a motion to correct these errors, to which Illiana objects.

## Discussion

Federal Rule of Civil Procedure 60(a) states that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  The courts have interpreted "clerical error" and "mistake" to encompass a variety of errors, such as filing dates, mathematical computations, ages, and misnomers. Rule 60(a) is intended to make the judgment or record speak the truth and is not a vehicle to make substantive changes to the record. ***American Trucking Association v. Frisco Transportation Co.***, 358 U.S. 133, 146, 79 S.Ct. 170, 177, 3 L.Ed.2d 172 (1958) ("the power to correct inadvertent ministerial errors may not be used as a guise for changing previous decisions because the wisdom of those decisions appears doubtful").  Rule 60(a) may not be employed to change decisions that were litigated and

deliberately decided.  *American Trucking Association*, 358 U.S. at 146, 79 S.Ct. at 177; *HyperQuest, Inc. v. N'Site Solutions*, 632 F.3d 377, 386 (7th Cir. 2011).  Rather, Rule 60(a) is used to correct the judgment to reflect what the court originally intended.  *HyperQuest*, 632 F.3d at 386; *Blue Cross and Blue Shield Association v. American Express Co.*, 467 F.3d 634, 637 (7th Cir. 2006) ("Rule 60(a) cannot be used to change language that was poorly chosen, as opposed to incorrectly transcribed.").  "The past cannot be rewritten; Rule 60(a) allows a court to correct records to show what was done, rather than change them to reflect what should have been done."  *Blue Cross*, 467 F.3d at 637.

Illiana first objects to Hartford's motion as being procedurally deficient, arguing that the amendments are sought not to change clerical errors, but to change the substance of the Opinion and Order.  Illiana argues that Hartford should have raised its arguments under Federal Rule of Civil Procedure 72(a), which provides a tool for seeking review of a magistrate judge's decision by the district court within 14 days of the Order.  Because Hartford waited 62 days from the March 7, 2012 Order to file the present motion, Illiana argues that Hartford's objections are untimely.

Both Rule 72 and Rule 60(a) provide a vehicle for amending decisions.  However, the court's power under Rule 72 is broader

and permits substantive changes to the judgment.  Because the time to appeal under Rule 72 has expired, the court will evaluate each of Hartford's requested amendments to determine if they affect the substance of the judgment or address clerical errors, which may be corrected under Rule 60(a) within one year of the court's decision.

First, the court inadvertently stated that the law suit was commenced on December 7, 2010, although the complaint was filed on December 7, 2006.  This is the type of misstatement that falls clearly within the ambits of Rule 60(a).  The date was transcribed incorrectly and should be amended to reflect what the court intended — the date the law suit actually was commenced. The court GRANTS Hartford's motion with respect to this error.

Next, Hartford challenges the court's statement that "an unknown person accessed and destroyed Illiana Surgery and Medical Center's medical management computer system."  Hartford complains that the identity of the individual who caused the loss is known. However, the court did not conclude that the identify of the individual could not be established.  At the time the order was entered, the identity had not been established and was unknown to the court.  This statement will not preclude Hartford from establishing the identity of the individual at later stages of these proceedings through competent evidence.

Illiana stated that the identity of the individual who destroyed the computer system was unknown in its response brief. Hartford did not object or suggest otherwise in its reply. A Rule 60(a) motion is not intended to supplement the record and allow amendments to consider evidence not before the court at the time it made its ruling. Hartford has not shown that the court overlooked any information that was available at the time of the decision warranting this amendment.

Hartford's third challenge concerns the court's statements that Fisher Kanaris "assisted" with the adjustment of the loss and that Kevin Pugliese "performed most of the adjusting and investigation of the Illiana claim." Hartford argues that the only evidence before the court shows that Palazzolo was solely responsible for the adjustment of the claim and that Fisher Kanaris provided only legal advice with respect to the claim. The court has found on multiple occasions that Pugliese, an attorney at Fisher Kanaris, assisted with the adjustment of the claim. Hartford now makes the same argument it has raised in response to the motion to compel and motion for sanctions that the court has rejected. If the court were to make this amend-ment, it would affect the substance of not only the Order on Hartford's motion to quash, but also the previous orders on Illiana's motion to compel and motion for sanctions. In its

9

previous Opinions, the court rejected the attorney-client privilege that Hartford raised in response to Illiana's discovery requests and ordered production of the documents because of Fisher-Kanaris' role in the adjustment of the claim.  The court did not make this statement out of error or oversight.  Rather, it is a finding the court relied on in support of its decision and speaks directly to the substance of its orders.  This amendment exceeds the scope of Rule 60(a), and Hartford failed to raise this objection with the district court under Rule 72 within 14 days.

Similarly, Hartford complains that Fisher Kanaris never "launched an investigation into the claim," asking the court, again, to amend its order to state that Fisher Kanaris' involvement was limited to providing legal advice.  This is the same litany that the court repeatedly has rejected.  The Opinion and Order states what the court intended and cannot be amended under Rule 60(a).

In the Opinion, the court stated that "fearing the two years would expire without a coverage determination, Illiana filed a complaint on December 7, 2006."  Hartford contests that Illiana filed suit only because it refused to agree to a tolling agreement to suspend the two year contractual suit limitation.  It is not clear why the impetus for Illiana to file suit is relevant.

The record reflects that the parties discussed a possible tolling agreement, but because no agreement was reached, the two year contractual limitation was set to expire near the time Illiana filed its complaint.  This statement did not bear on the court's opinion, and it is not clear why Hartford seeks this amendment.  In any case, the court stated what it intended, regardless of how Hartford would like it phrased.  The record is clear that Illiana filed suit at the end of the two year contractual limitation.

Hartford next complains that pages 2-3 of the court's Opinion and Order incorrectly state that Hartford caused delays during the initial document discovery in 2007-2008.  Hartford contends that the delays were due to Illiana filing for bankruptcy and asking the court to stay discovery.  The bankruptcy trustee requested a six month stay to resolve issues with the bankruptcy court before it could proceed with discovery.

On pages 2-3 of the court's Opinion, the court simply set forth the facts as they occurred.  The court explained that Hartford was ordered to produce its insurance policies, EUOs, and claim files.  Hartford served some of this information along with a privilege log.  In 2008, Illiana filed a motion to compel.  The court determined that the Fisher Kanaris attorneys were serving as outside claims adjusters and rejected the attorney-client and work product privileges Hartford raised.  Illiana learned that

all the documents had not been produced and sent an additional request on May 1, 2008.  Hartford supplemented its responses with 797 new documents on July 15, 2009, and 333 on July 22, 2009.

At no point did the court say that Hartford was solely responsible for the pace of discovery.  Rather, the court set forth the facts as they occurred during the relevant time period.  Hartford delayed discovery by failing to produce relevant information despite court orders.  Hartford does not challenge whether the Opinion accurately reflects the facts, rather it wants to place some responsibility for the delay on Illiana in an effort to shift the blame for its delays in producing information.  The court has included an accurate recitation of the relevant facts and finds that the requested amendment was not due to any mistake or oversight.

Next, Hartford argues that it did not produce any claim file documents on July 15, 2009.  Hartford explains that the 797 documents produced on this date were obtained from Wright Capital Partners, a private equity company that purchased Illiana in 2006 and renamed it Heartland Memorial Hospital.  Because Illiana had not received discovery from Wright Capital, Hartford represents that it forwarded the discovery to Illiana on this date, and that the documents never were made part of its claim file.

12

The court adopted this statement from its June 13, 2011 Opinion and Order recommending sanctions.  In its brief supporting the motion for sanctions, Illiana represented that Hartford produced 797 new claims file documents on July 15, 2009.  Hartford responded that it "produced to Plaintiffs Wright Capital documents, which were requested by Plaintiff."  Hartford did not challenge whether the Wright Capital documents were made part of the claims file, nor did it state that the documents were maintained in a file separate and distinct from the claim file.  Rule 60(a) is not a vehicle for amending orders because of a party's failure to set forth its position.  The court did not overlook evidence as it was not clear that the documents were not made part of the claims file.  Moreover, Wright Capital assisted with the investigation, and the documents in dispute pertain to Wright Capital's investigation of Illiana's claim.  The court has warned Hartford not to "split hairs" and has adopted a broader definition of the claim file to include the documents that were part of the investigation and adjustment process.

Hartford also complains that all materials produced on August 26, 2009, were maintained in a separate file by Jack Keeley, an employee of Con-Tech, and were not part of the claim file as the court stated.  Con-Tech was a third party hired to assist with the investigation.  Keeley maintained his own sepa-

rate file, which contained the 331 documents that Hartford produced on August 26, and which never were made part of Hartford's claim file.  Hartford argues that Con-Tech's actions cannot be imputed on it.

Again, the court adopted this statement from the facts set forth in the motion for sanctions.  This is not something the parties disputed in the context of the motion to quash.  Hartford did not object or challenge this statement in the motion for sanctions, yet challenges the court's statement in the motion to quash.  Hartford has not pointed to any evidence the court overlooked that was presented in support or defense of the motion to quash.  Rather, its arguments go back to the evidence submitted with Illiana's motion to compel and motion for sanctions and ask the court to make the record consistent with that evidence.

In its response to the motion for sanctions, Hartford stated that the relevant documents were maintained by Con-Tech in a separate file.  This court rejected the argument, finding that all documents related to the investigation and adjustment of the claim should have been produced and that Hartford should have understood that these documents were part of the claim file regardless of where they were located.  Hartford had promised to search for and produce documents pertaining to Keeley's work on Illiana's claim, but a year passed before Hartford produced any

14

such documents, which conveniently were produced immediately before Keeley's deposition.

Hartford's objection goes to the heart of the court's motion for sanctions. Although it does not bear directly on the substance of the Motion to Quash, what Hartford is challenging is a substantive decision that the court has heard and decided. The court has not overlooked any evidence submitted with the Motion to Quash, and Hartford's argument seeks to change a substantive decision that the court has reached. This type of challenge exceeds the scope of Rule 60(a).

Hartford next complains that the Opinion and Order incorrectly states that "[w]hile Illiana was preparing to depose Hartford's lead claims adjuster, Steve Palazzolo, it determined that Hartford failed to produce certain documents contained in the claim file." Hartford argues that the documents that had not been produced by this time were maintained by Fisher Kanaris in a separate file and were not part of the claim file. However, in the June 30 and November 18, 2008 orders, the court determined that Fisher Kanaris was acting as an outside claim adjuster, that the documents were not protected by the attorney-client or work product privileges, and that the documents were discoverable because they were part of the claim file. Because Fisher Kanaris was acting as an outside claim adjuster, their documents had to

15

be part of the claim file.  In the January 6, 2011, Opinion and Order, Judge Van Bokkelen stated that "It should have been clear to Hartford long before January 6, 2011, that because Mr. Pugliese was, as the Court found in its order of November 18, 2008, acting at least in part as an outside adjuster, the documents in his file relating to the investigation of Illiana's claim were part of Hartford's claim file, which Hartford had first been ordered to produce on April 4, 2007."  Hartford's motion attacks the substance of the court's previous orders and again falls outside the court's authority under Rule 60(a).

Finally, Hartford argues that it complied with every court order and that the court must correct its statement concerning "Hartford's persistent refusal to provide the documents irrespective of how many times the court has ordered production." Through this statement, the court was referencing Hartford's reluctance to turn over documents by its self determination that some documents which were derived from and used in the investigation and adjustment of the claim, but were kept in separate files, were distinct from the claim file.  It took several orders for Hartford to turn over all documents related to the investigation and adjustment of the claim.  Hartford persistently refused to provide the documents, which is what necessitated the numerous directives by the court to turn over such information.  Regard-

less, this statement did not bear on the outcome, and the court later acknowledged that Hartford produced the documents after sufficient prodding.  The facts accurately reflect the course of events and Hartford's refusal to provide the documents on more than one occasion.  Moreover, the court's statement that Hartford persistently refused to provide the documents was in response to whether any agreement could have been reached if the parties met and conferred as required by Rule 37 and Local Rule 37.1 prior to Hartford filing its motion.  The statement was in relation to the documents that were subject to the motion and had not been pro-duced.

_____

Based on the foregoing, the Motion to Correct Errors [DE 243] filed by the defendant, Hartford Fire Insurance Company, on May 8, 2012, is **GRANTED IN PART** and **DENIED IN PART**.  Because the court has decided all the issues presented in Hartford's motion to correct errors, the Motion Requesting Oral Argument With Respect to Its Motion to Correct Errors [DE 244] is **DENIED.**

ENTERED this 9th day of August, 2012

s/ ANDREW P. RODOVICH
United States Magistrate Judge