UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ILLIANA SURGERY AND MEDICAL | ) | |
| CENTER, LLC, n/k/a HEARTLAND | ) | |
| MEMORIAL HOSPITAL LLC, and | ) | |
| IHEALTHCARE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 2:07-CV-003-JVB-APR |
| | ) | |
| v. | ) | |
| | ) | |
| HARTFORD FIRE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION AND ORDER

This matter is before the court on the Plaintiff's Second Motion for Sanctions [DE 264] filed on December 7, 2012, and Hartford's Motion Requesting Oral Argument With Respect to Plaintiff's Second Motion for Sanctions and Default Judgment [DE 268] filed on January 4, 2013. For the following reasons, the Plaintiff's Second Motion for Sanctions [DE 264] is **GRANTED**, but with modified relief, and Hartford's Motion Requesting Oral Argument With Respect to Plaintiff's Second Motion for Sanctions and Default Judgment [DE 268] is **DENIED**.

Background

The tumultuous course of discovery has brought the parties the court once more to address Hartford's compliance with its obligations to produce discovery. To recap, the court first directed Hartford to produce its claim file at the Rule 16 conference held on April 4, 2007, over six years ago. Upon objection, the court found that the information contained in the claim

1

file was not subject to the attorney-client privilege, and ordered Hartford to produce the documents in the claim file on June 30, 2008. Although Hartford represented to Illiana that it produced the claim file in its entirety, Hartford later produced a myriad of additional documents.

Illiana proceeded to subpoena Steve Palazzo, Hartford's lead claims adjuster, and Jack Keeley, Hartford's computer consultant. In doing so, Illiana requested copies of documents pertaining to Keeley's work on Illiana's claim that had not already been produced by Hartford. A year earlier, Hartford's counsel had promised to search for and produce any such documents. However, fifty-three documents were produced immediately before Keeley's deposition. Illiana also issued a deposition subpoena to Kevin Pugliese, the Fisher Kanarais attorney who performed most of the adjusting and investigation of Illiana's claim. Hartford moved to quash the subpoena, raising the same arguments that it made in response to Illiana's motion to compel. The court again explained that Pugliese was acting as claims adjusters, not as an attorney, and the attorney-client privilege was inapplicable. At the court's direction, Hartford served an additional 441 documents from its claims file, the same one it previously told Illiana was produced in its entirety. None of the documents was listed in Hartford's privilege log, and Illiana had no way of knowing the documents existed.

Because Hartford defied the court's April 4, 2007, June 30, 2008, and November 18, 2008 Orders, the court granted Illiana's motion for sanctions on June 13, 2011. The parties appealed the Order to Judge Joseph VanBokkelen, who held a hearing. At the hearing, Hartford stated that all claims file documents had been produced. Judge VanBokkelen modified the sanctions imposed by this court, directed Hartford to pay Illiana's attorneys fees, and re-opened discovery

for Illiana.

Following the district court's order, Illiana issued supplemental discovery to Hartford and the third-party consultants it hired to help adjust Illiana's claim, which included a Second Supplemental Document Request to Hartford, a Rule 30(b)(6) deposition notice to Hartford, a subpoena to Buchanan Clarke and Schlader, Hartford's forensic accountants, a subpoena to Guidance Software, Hartford's computer consultant, and a subpoena to Fisher Kanaris, Hartford's attorneys. Hartford moved to quash most of the supplemental discovery requests, but the court rejected its argument and ordered compliance on March 7, 2012. Since the Opinion and Order, Hartford has produced 2,848 pages of documents from Buchanan Clarke Schlader, 3,005 pages of documents from Guidance Software, and 533 pages of documents from Fisher Kanaris.

In Hartford's reply in support of its motion to quash, it represented that Hartford had produced every document in its claim file. That same month, Hartford told Illiana that all of its adjustment materials had been produced and were produced long ago. Illiana followed up with Hartford regarding its second supplemental document request. Hartford provided its written responses, but it did not produce any additional documents, which sought, among other things, electronically stored information, including e-mails. Hartford stated that it could not "verify if all emails exist or have been produced. To the extent that emails were printed . . . they have been produced."

Illiana issued a Rule 30(b)(6) notice of deposition to Hartford. Illiana intended to take the deposition of a Hartford representative who could attest to the method by which Hartford maintained its electronic information over the course of Illiana's claim. Hartford opposed the

3

deposition, forcing Illiana to file a motion to compel.  The court determined that the information sought related to Illiana's bad faith claim and might aid in determining whether the entire claim file had been produced, and ordered Hartford to name representatives with direct knowledge of the ESI retention policies.  The parties subsequently scheduled the deposition for November 7, 2012.

Upon arrival at the deposition, Hartford turned over 849 new pages of documents.  The cover letter attached to the documents stated that the documents had not been produced previously because of inadvertent mistake.  Hartford explained that the documents either were in the wrong location and not picked up by standard search protocols, were personal notes from personnel outside the claim department, or were not captured in the manual collection process of 2004, 2005, and 2006.  The documents were not discovered until early 2012 during Hartford's effort to "double-check" its production status in this case and to confirm that all electronic and non-electronic discovery had been preserved and produced.  The parties dispute the importance of the documents, each arguing that they further support their position.

Despite representing it would produce multiple deponents, Hartford produced one deponent, John Moynihan, who was the Assistant Vice President and counsel in Hartford's legal department.  Moynihan worked at Hartford for two years and did not participate in Hartford's efforts to produce documents to Illiana in this case.  Moynihan was familiar with Hartford's ESI process because of his role as a litigation manager and the litigation group's liaison to Hartford's e-discovery non-attorney work force.  Moynihan prepared for the deposition by talking to employees in Hartford's legal department, an IT administrator, and two other Hartford employees.  Moynihan did not talk to document custodians about what documents they had or

how the documents had been gathered, did not review Illiana's discovery requests, and did not review any documents produced in response to Illiana's discovery requests. Moynihan also lacked knowledge about the documents Hartford produced the day of the deposition.

Illiana now asks the court to impose greater sanctions because, despite Hartford's repeated representations that all documents had been produced, it produced more documents at the deposition, Moynihan was not prepared for the deposition, and Moynihan indicated that additional documents exist that have not been produced.

## Discussion

Federal Rule of Civil Procedure 37(b)(2) gives the court authority to sanction a party for failing to comply with a court order and states in relevant part:

> (2) Sanctions in the District Where the Action Is Pending.
>     (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
>         (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
>         (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
>         (iii) striking pleadings in whole or in part;
>         (iv) staying further proceedings until the order is obeyed;
>         (v) dismissing the action or proceeding in whole or in part;
>         (vi) rendering a default judgment against the disobedient party; or
>         (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

The authority to sanction a non-compliant party also arises from the court's inherent power to manage its cases and achieve an orderly disposition. *See* ***Chambers v. NASCO, Inc.,*** 501 U.S.

32, 44, 47,111 S.Ct. 2123, 2132, 2134, 115 L.Ed.2d 27 (1991) (explaining that the court has broad inherent powers to sanction a party)*;* ***Barnhill v. United States***, 11 F.2d 1360, 1367 (7th Cir. 1993).

The court should consider several factors when determining which sanctions to employ, including: "the frequency and magnitude of the [party's] failure to comply with court deadlines, the effect of these failures on the court's time and schedules, the prejudice to other litigants, and the possible merits of the plaintiff's suit." ***Rice v. City of Chicago***, 333 F.3d 780, 784 (7th Cir. 2003) (citing *Williams v. Chicago Bd. of Educ.*, 155 F.3d 853, 857 (7th Cir. 1998)). The sanctions must be proportional to the party's misconduct. ***Collins v. Illinois,*** 554 F.3d 693, 696-98 (7th Cir. 2009). The court measures this by weighing the proposed sanctions against the egregiousness of the party's conduct. ***Barnhill***, 11 F.3d 1368.

Dismissal is the most severe sanction and generally is applied only when a party has displayed exceptional misconduct or when less drastic sanctions have proven unavailing. ***Sun v. Board of Trustees***, 473 F.3d 799, 811 (7th Cir. 2007) (explaining that the Seventh Circuit has a well established policy of favoring trial on the merits over default judgments); ***Maynard v. Nygren***, 332 F.3d 462, 467-468 (7th Cir. 2003); ***Danis v. USN Communications, Inc***., 2000 WL 1694325, 33-34 (N.D. Ill. Oct. 23, 2000) ("Because a default judgment deprives a party of a hearing on the merits, the harsh nature of this sanction should usually be employed only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party") (citing ***Societe Internationale v. Rogers***, 357 U.S. 197, 209, 78 S.Ct. 1087, 2 L.Ed.2d 1255 (1958) (explaining that a party should be sanctioned with dismissal only in extreme situations where there is evidence of willfulness, bad faith or fault by the noncomplying party)).

6

The court first must consider whether less severe sanctions will remedy the damage. *Marrocco v. General Motors*, 966 F.2d 220, 223-224 (7th Cir. 1992).

The Seventh Circuit has employed two different standards for determining whether dismissal is an appropriate sanction. When assessing a dismissal for want of prosecution or the failure to comply with a court order, the court must consider whether there has been a clear record of delay or contumacious conduct or whether less drastic sanctions have been unavailing. *Maynard*, 332 F.3d at 468-469; *Large v. Mobile Tool International, Inc*., 2008 WL 2116967, *7 (N.D. Ind. 2008) ("[C]ontumacious conduct merits strong sanctions, and when the court uses its inherent power to root out contumacious conduct, no showing of willfulness, bad faith, fault or even prejudice is required."). "A slightly different requirement— a finding of willfulness, bad faith or fault— comes into play when dismissals are used specifically as a discovery sanction under Fed.R.Civ.P. 37." *Maynard*, 332 F.3d at 468-469 (citing *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001); *Langley v. Union Electric Co.*, 107 F.3d 510, 514 (7th Cir. 1997); *In re Rimsat, Ltd.*, 212 F.3d 1039, 1046-47 (7th Cir. 2000) (requiring a finding of bad faith when a district court dismisses a case under the inherent powers of the court)). "That is, even without 'a clear record of delay, contumacious conduct or prior failed sanctions,' a court can apply the sanction of dismissal for Rule 37 violations with a finding of willfulness, bad faith or fault, as long as it first considers and explains why lesser sanctions would be inappropriate." *Maynard*, 332 F.3d at 468. *See also*, *Melendez v. Illinois Bell* Co., 79 F.3d 661, 671 (7th Cir. 1996) ("Sanctions are proper upon a finding of wilfulness, bad faith, or fault on the part of the noncomplying litigant.").

Bad faith is "conduct which is either intentional or in reckless disregard of a party's

7

obligations to comply with a court order." *Marrocco*, 966 F.2d at 224; *Maynard*, 332 F.3d at 470 (explaining that bad faith is exhibited where a party fails to comply with a court order or provides false or misleading responses). Similarly, fault does not mean the party's subjective motivation, but rather "the reasonableness of the conduct—or lack thereof— which eventually culminated in the violation." *Marrocco*, 966 F.2d at 224; *Langley*, 107 F.3d at 514. The Seventh Circuit requires clear and convincing evidence of the discovery abuse to justify a default judgment because of the harsh nature of the penalty and the court's policy of favoring trial on the merits. *Maynard*, 332 F.3d at 468 ("[C]onsidering the severe and punitive nature of dismissal as a discovery sanction, a court must have clear and convincing evidence of willfulness, bad faith or fault before dismissing a case."); *Larson v. Bank One Corp.*, 2005 WL 4652509, *9 (N.D. Ill. August 18, 2004) (explaining that a default judgment requires clear and convincing evidence of the sanctionable conduct, although an issue-related sanction requires only a preponderance of the evidence).

Illiana asks the court to issue sanctions because Hartford produced supplemental discovery after repeated assurances that all documents had been produced, Moynihan was not prepared for his deposition, and more documents exist that Hartford has yet to produce. Discovery has been ongoing for nearly six years. Hartford first was ordered to produce its claim file at the Rule 16 preliminary pre-trial conference. Upon numerous motions for compel and motions for sanctions, Hartford delivered the requested information in piecemeal fashion, each time representing to the court that all documents had been produced. Yet, Hartford discovered new documents during its November 2012 "double-check". Although the rules of discovery are designed so that parties must supplement their responses with any new or additional responsive

8

information as the case progresses, and the court does not wish to discourage a party from turning over recently discovered documents at the risk of facing sanctions, Hartford has not explained why this double-check was not completed earlier in the six year discovery period and prior to its multiple representations to the court that all documents had been produced. Each time Hartford has informed the court that all documents have been produced, new documents emerge, calling into question the integrity of Hartford's representations.

Hartford opposes sanctions in part because it made an offer to compensate for the late production of these additional documents. Hartford offered to make witnesses under its control available in Indianapolis at its expense and to use its best efforts to arrange any depositions of witnesses no longer under its control on an expedited basis. Illiana did not follow up and arrange any additional depositions. Although it is unfair to Illiana that Hartford is prolonging discovery by continuing to produce additional documents despite its representations that everything has been produced, Hartford has made reasonable efforts to compensate Illiana for the late production of these documents, rendering it difficult to find the bad faith necessary to employ the sanction Illiana seeks.

What is more troubling was Moynihan's indication that additional documents may exist that have not been turned over. At his deposition, Moynihan testified that tape backups of all emails from 2004 to the present were stored by Hartford. Illiana earlier requested copies of emails but was informed that the relevant e-mails had been destroyed. Moynihan stated that he was not aware of any efforts to look at these backups for documents in this case. Hartford did not address this in its response brief and has made no effort to deny that it may hold more relevant documents. However, it was not conclusive from Moynihan's testimony that Hartford

did not review the backup tapes. His deposition more accurately reveals that he personally was not aware of whether such measures were taken.

In any case, despite Moynihan's preparation, it does not appear that he was prepared to address the issues set forth in the notice of deposition. Rule 30(b)(6) places a burden on a business entity to identify witnesses who possess knowledge of the subjects requested in the deposition notice. ***Hooker v. Norfolk Southern Railway Company***, 204 F.R.D. 124, 126 (S.D. Ind. 2001). The business entity has a duty "to prepare its selected deponent to adequately testify not only on subject matters known by the deponent, but also on subjects that the entity should reasonably know." ***Hooker***, 204 F.R.D. at 126. The "corporation is required to educate its designee concerning all 'reasonably available' information, even if such information is not within the knowledge of the corporation's current employees." ***Chicago Regional Council of Carpenters Pension Fund v. Woodlawn Community Development Program***, 2011 WL 6318605, *4 (N.D. Ill. Dec. 15, 2011). The Rule is designed to prevent business entities from presenting employees who lack knowledge of the facts sought by the opposing party. ***Hooker***, 204 F.R.D. at 126.

Topic 1 stated Illiana's intent to question the deponent about Hartford's method of storing its Electronic Documents, and Topic 5 sought to inquire about the efforts Hartford made to locate and produce all electronic documents. Upon inquiry, Moynihan did not know whether Hartford performed any searches for the e-mails stored on backup tapes in this case and did not know what efforts were taken to locate certain documents that were produced. The best Moynihan could offer were assumptions. Moynihan also was without information concerning the documents that were produced the day of the deposition, a topic Hartford reasonably should

have anticipated in light of Topic 9, which sought to depose a Hartford representative on documents not yet produced. Moynihan was able to testify to Hartford's retention and gathering policies vaguely, but his knowledge of the efforts taken in this case was limited.

Although the court agrees that Hartford's cooperation has been less than ideal, it has not been egregious enough to warrant the sanction of dismissal as Illiana seeks. Hartford should have produced all documents at an earlier time, as it represented to the court it had. However, it should not face the ultimate sanction for finally coming forward with the documents it earlier failed to produce. The court also agrees that Moynihan was not prepared to answer all of the questions laid out in the notice of deposition. However, Hartford has offered a remedy to its shortcomings, by making witnesses available in Indianapolis at its expense for further discovery. Hartford's willingness to make an accommodation does not reflect the bad faith of a party deserving of the ultimate sanction.

This is not to say that no sanctions are appropriate. Hartford has made misrepresentations to the court, has not explained why it did not do a "double check" at an earlier time despite the multiple orders by the court to produce all documents, and did not provide a deponent who could respond to all the topics laid out in the deposition notice. For this reason, the court ORDERS Hartford to pay all costs associated with Illiana's motion as well as any additional costs and fees associated with discovery related to Hartford's late production of documents and failure to present a prepared deponent.

Based on the foregoing, the Plaintiff's Second Motion for Sanctions [DE 264] is **GRANTED**. Because the court has reached a decision on the merits, Hartford's Motion Requesting Oral Argument With Respect to Plaintiff's Second Motion for Sanctions and Default

Judgment [DE 268] is **DENIED.**

ENTERED this 16th day of May, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge